UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-20478-CIV-UNGARO/DUBÉ

FALISTIL CLAUDE,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. #22) and the Motion for Summary Judgment filed by the Defendant (D.E. #26) pursuant to a Clerk's Notice of Magistrate Judge Assignment entered by the Clerk of Court, United States District Court for the Southern District of Florida. The issue before this Court is whether the record contains substantial evidence to support the denial of benefits to Plaintiff, Falistil Claude (hereinafter "Claude" or "Plaintiff").

### I. FACTS

On January 26, 2005, the Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging a disability onset date of October 1, 2004. (R. 84-88, 571-575).[1] The applications were denied initially and on reconsideration. (R. 29-36, 62-70, 557-568). An initial hearing was held on August 2, 2007. (R. 581-602). Following the hearing, the ALJ issued a decision denying the request for benefits. (R. 17-28). A request for review filed with the Appeals

---

1. All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

Council was denied. (R. 8-11).

The Plaintiff, age 51 at the time of the hearing, testified he did not go to school and worked in construction until 2004. (R. 586-587). He also testified that he stopped working because "blood burst inside his head. The Plaintiff stated that since the incident, he sees a "doctor all the time." Claude stated he takes seven different medications but could not remember their names. (R. 587). The Plaintiff testified he takes medication for the filter on the side of his head, cholesterol and high blood pressure. Claude stated he has a driver's license and a car, but has not driven since his surgery. The Plaintiff further stated that a friend of his drives his car. The Plaintiff said he has two children who both attend school.

According to the Plaintiff, he came to the United States in 1981 and is not an American citizen. (R. 588). The Plaintiff stated he cannot carry anything and has trouble sitting and walking. He explained that if he walks three blocks he becomes dizzy. Additionally, the Plaintiff stated he sleeps three hours at night but never sleeps during the day. Claude testified that during the day he does not do anything except eat food that his wife prepares for him. Claude further testified he does not watch television because his head hurts. He explained that he feels a painful noise in his head when watching television. (R. 589).

Claude stated he also hears the noise in his head when listening to the radio or when someone shuts a door. According to Claude, he cannot sit very long or walk because the filter on the side of his head becomes swollen. The Plaintiff testified he cannot lift or carry because of his balance. The Plaintiff further testified he has difficulty breathing which can be caused by even slight movement. (R. 590).

In addition to the Plaintiff's testimony, Junenne Claude (hereinafter "Junenne" or " Plaintiff's

wife") testified at the hearing. The Plaintiff's wife stated that her husband cannot read or write in English or Creole. She also stated that she cannot read or write in English. (R. 592). Junenne testified her husband has back pain and pain on the right side of his head where the filter is located. (R. 593). She explained that the filter was placed into her husband's head because, "he had little balls in his veins and they said that if those little balls go to his head it would not be very good." The Plaintiff's wife further testified that the Plaintiff has pain and gets dizzy every day. According to Junenne, the Plaintiff has problems seeing but does not wear glasses. (R. 594). Junenne testified all the Plaintiff's problems began after the surgery and now he has no energy to do anything, and he is not able to do anything for himself. (R. 595).

The Plaintiff's wife testified that Claude has problems with his memory, and forgets where he places things, if he has eaten and to take his medications. (R. 595-596). She added that prior to the surgery he knew family members' birth dates, but now he does not. (R. 596). Junenne testified that the Plaintiff will begin to shower on his own but sometimes needs to call her for help because he feels like he is going to fall. She added that he cannot perform any chores as well. (R. 597).

Joseph Philijean (hereinafter "Philijean") a friend of the Plaintiff also testified at the hearing. Philijean testified that he's known the Plaintiff for 17-18 years and he currently sees the Plaintiff every day for 20-30 minutes. (R. 598). Philijean testified that since the Plaintiff's surgery, Claude is not the same person. He explained that the Plaintiff used to enjoy work, but now cannot work anymore. He further testified that the Plaintiff would not be able to go out alone because he gets dizzy all the time and cannot drive. (R. 599). Philijean stated the Plaintiff does not sleep and will usually have headaches when they are together, for which the Plaintiff takes medication. (R. 600).

The Plaintiff continued to testify and stated that the only thing he does for his pain is take

medications and pray. He added that sometimes the medications he takes do not help alleviate the pain. (R. 601).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. However, a review of the medical records and the specific issues raised by the Plaintiff in his Motion for Summary Judgment shows the resolution of the issues do not require this Court to specifically set out all the medical evidence in detail. Accordingly, this Court will discuss the legal issues involved and will incorporate the facts as appropriate within the arguments presented below.

After a hearing and review of the record, the ALJ issued an opinion finding that the Plaintiff had the following severe impairments: residual effects of an aneurysm and surgery, a pulmonary embolism and essential hypertension. (R. 22). The ALJ further found that the Plaintiff did not have an impairment or combination of impairments that meets or equals a listing. The ALJ determined that the Plaintiff retained the residual functional to perform a full range of medium work. (R. 23). The ALJ found that the Plaintiff could not return to his past relevant work. The ALJ further determined that at step five, the Plaintiff could perform other jobs that exist in significant numbers in the national economy. (R. 27). The ALJ concluded that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. 28).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is

generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the

ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that she is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

The Plaintiff's first point of contention is that the ALJ improperly rejected the opinions of the Plaintiff's treating and examining physicians.

Opinions from treating physicians are entitled to substantial or considerable weight unless

there is good cause not according them such weight. Phillips v. Barnhart, 357 F. 3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or when the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

A review of the record reveals that the ALJ made the following assessment regarding the treatment by the Plaintiff's treating and examining physicians, Dr. Etienne:

> Dr. Joseph Etienne stated on January 24, 2005 that the claimant was unable to return to his work as a construction worker or any other job that required physical exertion (Exhibit 9F).
>
> Dr. Joseph Etienne reported on December 27, 2005 that the claimant was able to lift and carry 20 pounds occasionally. He said that the claimant can sit for four hours in an eight hour workday, he can sit for two hours in an eight hour workday, and he is unable to walk. He also stated that the claimant is able to frequently bend and reach above shoulder level, and that he can occasionally squat, crawl and climb. Dr. Etienne also reported that the claimant has total restriction of activities involving driving. He said that the claimant has moderate restriction of activities involving moving machinery, and that he has mild restriction of activities involving unprotected heights, marked changes in temperature and humidity, and exposure to dust, fumes and gases. He further stated that the claimant has difficulty fulfilling his activities of daily living and that he is disabled (Exhibit 9F).

(R. 26). The ALJ rejected Dr. Etienne's opinion as follows:

> ... the opinion of Dr. Etienne that the claimant is disabled was considered but given little weight as this is an opinion that is reserved to the Commissioner, and it is not supported by the evidence as a whole but seems to be based largely on the claimant's subjective complaints.

(R. 26).

On December 27, 2005, Dr. Etienne completed interrogatories. (R. 278-284). Dr. Etienne opined that the Plaintiff would not be able to perform sedentary or light work because the Plaintiff

7

has difficulty fulfilling his activities of daily living. (R. 278). He further opined that the Plaintiff could sit 4 hours, stand 2 hours, and could walk less than 1 hour in an 8-hour workday. Dr. Etienne stated the Plaintiff could occasionally lift/carry up to 20 pounds but could never lift/carry over that amount. Dr. Etienne found the Plaintiff could frequently bend and reach above shoulder level and could occasionally squat, crawl and climb. (R. 279). Dr. Etienne opined that the Plaintiff's problems are caused by a brain aneurysm. (R. 280). Additionally, Dr. Etienne found that the Plaintiff would not have the capacity to function in sustained daily work on an 8-hour a day, 5 day a week basis. He based this determination on occupational therapy, CT/MRI and physical examination. (R. 282).

A CT of the brain taken on August 26, 2004, revealed extensive subarchnoid hemorrhage; questions of diffuse cerebral edema vs. appearance secondary to subarchnoid hemorrhage; mild hydrocephalus; and hypodensity in the left striatum adjacent white matter consistent with ischemia. (R. 190). A CT of the brain taken on September 13, 2004 revealed no evidence of hydrocephalus, residual or recurrent hemorrhage; persistent and slightly more prominent hypodense changes of the left frontal region, as described, as well as in the head of the left caudate nucleus. (R. 203). A CT of the brain take on September 21, 2004, revealed as follows:

> ... small subacute lancunar infarct involving the head of the left caudate with new small subcortical hypodensity in the parasylvian region of the right frontal pole which may also represent a subacute infarct vs. volume avergaing in the parasylvian region. Recommend correlation with diffusion weighted MRI if clinical suspicion exists for acute infarct.
>
> Resolving edema within the anterior limb of the internal capsule on the left. No new areas of hemorrhage.

(R. 299).

The Plaintiff was treated by Dr. Etienne on multiple occasions between September 30, 2004

through October 2006. The Plaintiff consistently reported to Dr. Etienne complaints of dizziness, headaches, and fatigue. (R. 216, 289, 467-468, 532). The Plaintiff further reported that spells of dizziness could occur every 2-3 days and would last for several minutes or several hours. (R. 289).

The Plaintiff was taken to the emergency room on February 4, 2006, with complaints of chronic left upper quadrant discomfort. (R. 454). The attending physician wondered whether the pain was medicine related because the pain began concurrent with the Plaintiff being placed on multiple medications. (R. 455).

The Eleventh Circuit has specifically determined that when electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons. Lewis v. Callahan, 125 F. 1436, 1440 (11th Cir. 1997). It is the opinion of this Court that the ALJ did not meet the standard set by the 11th Circuit as the ALJ did not clearly articulate his reasons for rejecting of the opinion of Dr. Etienne and the reasons stated herein above were a general rejection of said opinion.

It is the opinion of this Court that in the instant matter, the ALJ did not clearly articulate his reasons for rejecting the opinion of the Plaintiff's treating physician and provided a general blanket rejection and instead relied on the opinion of a non-examining consultative examiner. A treating doctor's opinion is entitled to more weight than a consulting doctor's opinion. Wilson v. Heckler, 734 F. 2d 513, 519 (11th Cir. 1984). As such, the Court finds that remand is required so a proper evaluation of Dr. Etienne's treatment record and opinion can be made.

Additionally, the ALJ evaluated the opinion of Dr. Alejandro J. Arias, a consultative examiner, and stated as follows:

> Dr. Alejandro J. Arias, a consultative psychological examiner, evaluated the claimant on October 6, 2005. Dr. Arias reported that the claimant had cognitive disorder and depressive disorder. He

>   stated that the claimant had significant cognitive deficits related to his cerebral hemorrhage with cerebral aneurysm and surgery, and that he had comorbid depressive features (Exhibit 6F).

(R. 26). The ALJ assigned the opinion little weight as it was not consistent with the report of Dr. Cadet or the report of Dr. Etienne that "the claimant's memory and concentration were fair, and that the claimant had normal ability to relate to others, behavior, thought control and judgment were normal." (R. 26-27). However, it is the opinion of this Court that the ALJ improperly rejected said opinion as well, as Drs. Cadet and Etienne are not psychologists and therefore not specialist in this area.

The Plaintiff next contends that the ALJ improperly rejected the opinions of the lay witnesses who testified at the Plaintiff's hearing. With regard to said witnesses the ALJ noted as follows:

>   The testimony of Ms. Claude and Mr. Philogene does not establish that the claimant is disabled. Since they are not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the testimony is questionable. Moreover, by virtue of their relationships with the claimant, the witnesses cannot be considered a disinterested third party witness whose testimony would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges. Most importantly, significant weight cannot be given to the witness's testimony because it, like the claimant's is simply not consistent with the preponderance of the opinions and observations by medical doctors in this case.

(R. 27). It is the opinion of this Court that the ALJ properly and specifically stated his reasons for rejecting the testimony of the lay witnesses. The ALJ stated that both witnesses are not medically trained; could not describe the frequency or intensity of unusual moods or mannerisms; and were not disinterested parties.

The Court's findings regarding the treating and examining physicians impacts several of the

10

Plaintiff's other points of contention, which include as follows: the ALJ's step 2 evaluation of the Plaintiff's anxiety disorder and cognitive disorder was improper; the residual functional capacity assessment was not properly supported; and the ALJ failed to properly consider the side effects of the Plaintiff's medications. The Court will briefly review same.

The determination of whether an impairment is severe or not at step two of the sequential analysis is a threshold inquiry. McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986). The court in McDaniel elaborated on the requirements for a finding of severity as follows:

> It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.

McDaniel, 800 F.2d at 1031; see also, Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987).

Dr. Arias found that the Plaintiff was a "poor historian[] and his friend was able to provide most background information." (R. 245). He further found mood to be depressed and affect somewhat blunted. Dr. Arias also found evidence of psychomotor retardation and stated that the findings were considered to be under representative of his current level of functioning. Dr. Arias, stated, that the Plaintiff presented with significant cognitive deficits. He also diagnosed the Plaintiff with cognitive disorder and depressive disorder. (R. 246). Additionally, the emergency room physician that treated the Plaintiff noted in dicta that the Plaintiff appeared "somewhat" depressed. (R. 455).

It is the opinion of this Court that further evaluation is needed with regard to the Plaintiff's mental impairment and the Plaintiff met the threshold requirement of demonstrating the impairment

is not so slight and its effect is not so minimal.

The residual functional capacity is an assessment which is based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997), citing, 20 C.F.R. § 404.1545(a). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess ... her work-related abilities on a function by function basis.... Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." Freeman v. Barnhart, 220 Fed. Appx. 957, 960 (11th Cir. 2007).

As the Court has already determined that the opinions of Drs. Etienne and Arias must be reevaluated, the RFC evaluation should be reconsidered, if necessary. Additionally, on remand, the side effects from the Plaintiff's medications, if any, should be considered. The Plaintiff's remaining arguments regarding the ALJ's failure to consider or otherwise properly assess the listing criteria; improperly applying the medical vocational guidelines the ALJ's failure to fully develop the record; and consider all the evidence are rendered moot by virtue of the Court's findings herein above.

### III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court finds that the decision of the ALJ was not supported by substantial evidence and that the correct legal standards were not applied. Therefore, it is the recommendation of this Court that the decision of the Commissioner be **REVERSED and REMANDED** for further evaluation. Accordingly, the Motion for Summary Judgment filed by the Plaintiff (D.E. #22) should be **GRANTED in part** and the Motion for Summary Judgment filed by the Defendant (D.E. #26) should be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from service of

this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Ursula Ungaro, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); R.T.C. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** this \_\_\_21\_\_\_ day of December, 2009.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE